IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,
    Plaintiff,

vs.                                                              No. 15-10152-02-JTM
                                                                Civil No. 18-1142-JTM

HIPOLITO MERAZ-LEYVA,
    Defendant.


MEMORANDUM AND ORDER


Defendant Hipolito Meraz-Leyva pled guilty to possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. (Dkt. 163, 164). The court dismissed ten other counts against the defendant, and sentenced him to 120 months imprisonment. (Dkt. 229). The matter is now before the court on defendant's Motion to Vacate (Dkt. 278) his sentence pursuant to 28 U.S.C. § 2255.

In this motion, defendant alleges that his lawyer was ineffective (1) in negligently failing to file an appeal, (2) his attorney failed to obtain the safety valve sentence he was asserts he was entitled to, and (3) the "Government never proved byond a reasonable doubt the rol [sic] of Petitioner into the criminal activity," and "never argued about it." (*Id*. at 5). The court hereby dismisses defendant's motion for the following reasons.

First, the motion is time-barred. The court entered Judgment on December 23, 2016. (Dkt. 229). Because defendant filed no appeal, his conviction became final 14 days later. Fed.R.App.P. 4(b)(1)(A). Normally, a request for relief under § 2255 must be made within one year of when the conviction is final. 28 U.S.C. § 2255(f). The statute provides some exceptions to this rule, but none of these is applicable here. There was no impediment put in place in violation of the Constitution which prevented defendant from seeking timely relief, defendant cites no new right which has been recognized by the Supreme Court which has been made retroactive to cases on collateral review, and he presents no facts which could not have been previously discovered with due diligence. Defendant simply contradicts, without plausible explanation, his previous voluntary and open plea. These claims are untimely.

Even assuming the motion was timely, the claims now asserted were waived by the defendant. When he entered his Plea Agreement, defendant explicitly admitted to "knowingly committing these offenses, and to being guilty of them." (Dkt. 164, ¶ 1.) His admissions as to the details of the crimes were specific. He agreed that the government had intercepts of telephone calls which showed that he operated as the right-hand man for co-defendant Felizardo Urias-Avilez in their plan for the distribution of some two pounds of methamphetamine. Defendant acknowledged the details of the drug transaction, including the price to be paid ($18,000), and the place of delivery (a Pizza Hut in Kingman, Kansas). He admitted the government's case was supported by telephone intercepts, the observations of a cooperating source, visual surveillance by

2

DEA officers of Meraz driving co-defendant Pearla Garza to the delivery, contemporary text intercepts from Urias-Avilez indicating that defendant was driving to the Pizza Hut in a brown Impala, and the discovery and seizure of 651.3 grams of methamphetamine from the Impala after it was stopped. (*Id*. at 2-3).

The defendant freely and voluntarily waived his rights to appeal and collateral attack. Specifically, he agreed:

> **Waiver of Appeal and Collateral Attack**. The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], and a motion brought under Fed. R. Civ. P. 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

(Plea Agreement, ¶ 11).

In his Petition to Enter Plea of Guilty, the defendant swore his plea of guilty was free, voluntary, and with a full understanding of all matters set forth in the Plea. (Dkt. 163, ¶ 23). In both the Plea Petition and Agreement, he acknowledged that the final

sentence was up to the court, and he could not withdraw the plea later. The final sentence imposed was within the range contained in the Plea Agreement.

The court finds no reason why the waiver in the Plea Agreement should not be enforced. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004) (setting standards for enforcement). Here, the defendant's present collateral claims fall squarely within the scope of the waiver rights. Defendant's final sentence was within the range contemplated by the Plea Agreement, and defendant agreed the final sentence would be imposed by the court, based upon its own assessment of the case, and that he would not challenge this assessment. Defendant freely and voluntarily agreed to waive collateral challenges to the sentence imposed.

Second, the court finds that Meras-Leyva's waiver was knowing and voluntary. As indicated above, the waiver provision in the Plea Agreement is plain and obvious. Defendant's plea was entered "freely and voluntarily." (Dkt. 163, ¶ 23). He specifically agreed that he had discussed the case, the evidence and the plea with his attorney. Based upon the Petition, the Agreement, and the careful and extensive plea colloquy between the court and the defendant, it is clearly established that the defendant fully understood the all consequences of his Agreement.

Third, no manifest injustice arises from enforcement of the waiver. Factors which might establish such injustice, *see Hahn*, 359 F.3d at 1327, are entirely absent. The waiver was otherwise lawful, the sentence did not exceed the statutory maximum, and defendant's race played no role in the sentencing. Nor was counsel ineffective in the

4

plea negotiations. The court is aware of the high professionalism and expertise of counsel, was able to directly observe the performance of counsel, and directly interacted with defendant as to the free and knowing nature of his plea. Notwithstanding his present assertions, the court finds that the defendant understood what was happening and why, knew his rights of his trial and appeal, and the effect of a waiver. But he also knew there was strong evidence against him, and there were advantages to pleading guilty. Counsel secured for the defendant good and valuable benefits by the plea negotiations, under which the government dismissed additional charges against him. Enforcement of a waiver to which defendant freely agreed is no miscarriage of justice.

Finally, even if the present claims were not time-barred and were not waived, the defendant would not be entitled to relief. The defendant has failed to meet his burden of showing that counsel was actually deficient in performance or that any such deficiency resulted in prejudice to his interest. *See Strickland v. Washington*, 466 U.S. 668 (1984). Here, the defendant makes the conclusory allegation that his attorney failed to inform him of his right to appeal, and indeed that "the Judge told Petitioner that he could not appellate [sic]." (Dkt. 278, at 14), that he was not guilty of the offense, and asserts he should have received a safety valve sentence.

The suggestion that defendant was told he could not contest the evidence against him, and could not appeal a verdict of guilty, are simply false. Both counsel and the court informed defendant of his rights to trial and appeal. Defendant swore to the court in his Petition: "I believe that my lawyer has done all that anyone could do to counsel

5

and assist me, and I am satisfied with the advice and help he has given me." (Dkt. 163, ¶ 19). Nor has the defendant shown that he has suffered any prejudice from the alleged errors. There was particularly strong evidence of the defendant's guilt, and defendant has shown no reason to believe either that a trial, appeal, or application for safety valve sentencing would have rendered a more favorable result.

The defendant has failed to show any miscarriage of justice arising from the enforcement of the Plea Agreement he freely, voluntarily, and knowingly entered into. Meraz-Leyva received the benefits of the bargain, received a reasonable and appropriate sentence, and has shown no grounds for modification of that sentence.

Finally, the court declines to issue a certificate of appealability, which may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). Such a certificate may issue where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S.Ct. 2562, 159 L.Ed.2d 384 (2004)). When a court's ruling is based on procedural grounds, a movant must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

The defendant has not met these standards; the defendant's present claims are untimely, have been waived by a voluntary and knowing plea agreement, and fail to show either deficient performance by counsel or any actual prejudice. The Court therefore denies a certificate of appealability as to its ruling on defendant's Section 2255 motion.

IT IS ACCORDINGLY ORDERED this day of February, 2020, that the defendant's Motion to Vacate (Dkt. 278) is denied; the court declines to issue a certificate of appealability.

*J. Thomas Marten*
J. Thomas Marten, Judge